## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ALI AL-AHMED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL CHERTOFF, Secretary, U.S. | ) | Civil Action No.  08-0678 (ESH) |
| Department of Homeland Security, et. Al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER

By and through undersigned counsel, Plaintiff Ali Al-Ahmed ("Mr. Al-Ahmed") hereby submits this Memorandum of Points and Authorities in Opposition to the Motion to Transfer submitted by Michael Chertoff, Secretary, U.S. Department of Homeland Security; Emilio T. Gonzales, Director, U.S. Citizenship and Immigration Services ("USCIS"); Phyllis Howard, District Director of USCIS; and Michael Mukasey, Attorney General, U.S. Department of Justice (collectively,"Defendants").  For the reasons stated herein, the U. S. District Court for the District of Columbia is the appropriate forum for this action.  Accordingly, Mr. Al-Ahmed respectfully requests this Court deny the Motion to Transfer and exercise its proper jurisdiction. A proposed order is attached.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ............................................................................................................1

I.    TRANSFER IS NOT APPROPRIATE WHEN THE DISTRICT OF COLUMBIA
      IS THE ONLY PROPER VENUE AND, ALTERNATIVELY, PUBLIC AND
      PRIVATE INTERESTS WEIGH AGAINST TRANSFER. ..................................1

      A.    THE DISTRICT OF COLUMBIA IS THE ONLY PROPER VENUE
            FOR THIS CASE...................................................................................2

      B.    ALTERNATIVELY, EVEN IF MR. AL-AHMED COULD HAVE
            BROUGHT HIS SUIT ELSEWHERE, PUBLIC AND PRIVATE
            INTERESTS WEIGH AGAINST TRANSFER. ......................................5

            1.    PRIVATE CONCERNS OF THE PARTIES WEIGH AGAINST
                  TRANSFER. ………………………………………………………...5

            2.    PUBLIC INTEREST CONCERNS WEIGH AGAINST
                  TRANSFER. ..................................................................11

CONCLUSION.......................................................................................................14

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Airport Working Group, Inc. v. U.S. Dep't of Defense*,
226 F. Supp. 2d 227 (D.D.C. 2002)........................................................................ 6-7

*Akiachak Native Community v. U.S. Dep't of Interior*,
502 F. Supp. 2d 64 (D.D.C. 2007)......................................................................... 9-10

*Arevalo-Franco v. U.S. Immigration & Naturalization Servs.*,
889 F.2d 589 (5th Cir. 1989) .................................................................................3

*Barham v. UBS Fin. Servs.*,
496 F. Supp. 2d 174 (D.D.C. 2007).........................................................................9

*Ben-Rafael v. Islamic Republic of Iran*,
540 F. Supp. 2d 39 (D.D.C. 2008).........................................................................12

*Brannen v. Nat'l R.R. Passenger Corp.*,
403 F. Supp. 2d 89 (D.D.C. 2005).........................................................................10

*Elemary v. Holzmann*,
533 F. Supp. 2d 144 (D.D.C. 2008).................................................................. 5-7, 10

*Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of Treasury*,
498 F. Supp. 2d 150 (D.D.C. 2007).........................................................................12

*F.L. v. Thompson*,
293 F. Supp. 2d 86 (D.D.C. 2003).........................................................................12

*Ferens v. John Deere Co.*,
494 U.S. 516 (1990)..........................................................................................10

*Great Socialist People's Libyan Arab Jamahiriya v. Miski*,
496 F. Supp. 2d 137 (D.D.C. 2007)..................................................................... 9-10

*Greater Yellowstone Coal. v. Bosworth*,
180 F. Supp. 2d 124 (D.D.C. 2001).................................................................. 8, 10-11

*Green v. Footlocker Retail, Inc.*,
No. 04-1875, 2005 WL 1330686 (D.D.C. June 3, 2005).........................................12

*Hamandi v. Chertoff*,
No. 07-2153, 2008 WL 1958931 (D.D.C. May 6, 2008).........................................12

ii

*Ho v. United States*,
     374 F. Supp. 2d 82 (2005) ........................................................................12

*Hoffman v. Blaski*,
     363 U.S. 335 (1960)..................................................................................2

*In re Scott*,
     709 F.2d 717 (D.C. Cir. 1983) ..................................................................2

*Islamic Republic of Iran v. Boeing Co.*,
     477 F. Supp. 142 (D.D.C. 1979) ...............................................................6

*Lentz v. Eli Lilly & Co.*,
     464 F. Supp. 2d 35 (D.D.C. 2006) ............................................................2

*Mahoney v. Eli Lilly & Co.*,
     545 F. Supp. 2d 123 (D.D.C. 2008) ......................................................5, 10

*Montgomery v. STG Int'l, Inc.*,
     532 F. Supp. 2d 29 (D.D.C. 2008) ................................................... 9, 11-12

*Ou v. Chertoff*,
     No. C-07-3676, 2008 WL 686869 (N.D. Cal. March 12, 2008)................................3

*Piper Aircraft Co. v. Reyno*,
     454 U.S. 235 (1981).............................................................................2, 6

*Prudencio v. Hanselmann*,
     178 F. Supp. 887 (D. Minn. 1959).............................................................3

*Robinson v. Eli Lilly & Co.*,
     535 F. Supp. 2d 49 (D.D.C. 2008) ......................................................5, 10

*S. Utah Wilderness Alliance v. Norton*,
     315 F. Supp. 2d 82 (D.D.C. 2004) .............................................................6

*Sec. & Exch. Comm'n v. Savoy Indus. Inc.*,
     587 F.2d 1149 (D.C. Cir. 1978) ....................................................... 1, 5-6, 8

*Shenandoah Assocs. Ltd. P'ship v. Tirana*,
     182 F. Supp. 2d 14 (D.D.C. 2001) ...........................................................12

*Sierra Club v. Flowers*,
     276 F. Supp. 2d 62 (D.D.C. 2003) .............................................................7

*Sierra Club v. Van Antwerp*,
     523 F. Supp. 2d 5 (D.D.C. 2007) .............................................................10

WASH_4334488.1

*Starnes v. McGuire,*
   512 F.2d 918 (D.C. Cir. 1974) .................................................................................. 1

*Stewart Org. Inc. v. Ricoh Corp.,*
   487 U.S. 22 (1988) ................................................................................................... 5

*Trout Unlimited v. U.S. Dep't of Agric.,*
   944 F. Supp. 13 (D.D.C.1996) ......................................................................... 2, 6, 10

*Van Dusen v. Barrack,*
   376 U.S. 612 (1964) ................................................................................................. 5

*Wilderness Soc'y v. Babbitt,*
   104 F.Supp.2d 10 (D.D.C. 2000) ................................................................... 8, 10-11

*Williams v. United States,*
   704 F.2d 1222 (11th Cir. 1983) ............................................................................... 3

## FEDERAL STATUTES

28 U.S.C. § 1391(e)(3) ................................................................................... 2-3, 5, 7

28 U.S.C. §1404(a) ........................................................................................ 1-2, 10

WASH_4334488.1

## PRELIMINARY STATEMENT

As Plaintiff, Mr. Al-Ahmed chose to file his case in the U.S. District Court for the District of Columbia.  Without ever sufficiently demonstrating the inappropriateness of venue in this Court, Defendants argue throughout their Motion that they prefer another court.  That Defendants may prefer the Eastern District of Virginia is simply not a reason for transfer. Defendants fail to demonstrate that transfer serves the convenience of the parties and witnesses and the interests of justice as required by 28 U.S.C. §1404(a).  This case belongs in the District of Columbia—the site of a substantial part of the critical events and omissions, the Defendants' residence for purposes of the venue statute, and the base of Mr. Al-Ahmed's important professional and scholarly efforts—and not the Eastern District of Virginia, a sister court a mere ten miles away.

## ARGUMENT

### I.    TRANSFER IS NOT APPROPRIATE WHEN THE DISTRICT OF COLUMBIA IS THE ONLY PROPER VENUE AND, ALTERNATIVELY, PUBLIC AND PRIVATE INTERESTS WEIGH AGAINST TRANSFER.

As Defendants correctly indicate, a court may transfer a case to another court, in which the action could have been brought originally, but only if the transfer serves "the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  It is not enough, as in this case, to simply demonstrate that an action could have been brought in another venue or that the movant might prefer another venue.  If venue is proper in a court, transfer to another court under § 1404(a) must "'be justified by particular circumstances that render the transferor forum inappropriate by reference to the considerations specified in the statute.'"  *Sec. & Exch. Comm'n v. Savoy Indus. Inc.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978)(quoting *Starnes v.*

1

*McGuire*, 512 F.2d 918, 925 (D.C. Cir. 1974)). It is the moving party—in this case the

Defendants—that bears the burden of demonstrating that transfer is appropriate. *Trout Unlimited*

*v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C.1996). The judgment of whether transfer is

appropriate is "'committed to the sound discretion of the trial court.'" *Lentz v. Eli Lilly & Co.*,

464 F. Supp. 2d 35, 36 (D.D.C. 2006)(quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257

(1981)). Defendants have failed to meet this onerous burden and to demonstrate that transfer of

this case is appropriate. As at least one sister court has suggested, the District of Columbia is the

only appropriate venue for this action considering that a substantial part of the events at issue

occurred there and Mr. Al-Ahmed is an alien without a residence for purposes of venue.

Alternatively, even if Mr. Al-Ahmed could have brought his case elsewhere, compelling public

and private interests weigh against transfer. Mr. Al-Ahmed respectfully requests this Court

exercise its broad discretion, hold that transfer is unwarranted, and deny the motion.

A.    THE DISTRICT OF COLUMBIA IS THE ONLY PROPER VENUE
      FOR THIS CASE.

As a threshold matter, a court must determine whether the action could have been

brought in the proposed alternative court—in this case, the Eastern District of Virginia. Thus,

without even considering the soundness of a proposed transfer, 28 U.S.C. § 1404(a) demands the

movant prove the transferee court is a place of proper venue. *Hoffman v. Blaski*, 363 U.S. 335

(1960); *In re Scott*, 709 F.2d 717, 720 (D.C. Cir. 1983). Defendants have failed to meet their

burden; the Eastern District of Virginia is not a proper venue.

As Defendants acknowledge, because Mr. Al-Ahmed sued officers of the United

States acting in their official capacity, venue considerations are specifically governed by 28

U.S.C. § 1391(e)(3), which allows such suits to be brought, for our purposes, in a judicial district

in which the defendant resides, the plaintiff resides, or a "substantial part of the events or

2

omissions occurred." *Id*. Considering each of these options, as applied to the facts in Mr. Al-Ahmed's case, compels the conclusion that the District of Columbia is the only appropriate venue for this case.

First, the Defendants effectively concede that Defendants, for purposes of § 1391, reside in the District of Columbia. Second, as an alien, Mr. Al-Ahmed's residence is irrelevant for venue purposes under § 1391. Although he was granted asylum in the United States in August 1998, Mr. Al-Ahmed is a citizen and national of Saudi Arabia. (Compl. 3.) Courts have long held that aliens, for purposes of venue under § 1391, "are not residents of *any* district despite where they might live." *Arevalo-Franco v. U.S. Immigration & Naturalization Servs.*, 889 F.2d 589, 590 (5th Cir. 1989); *see also Williams v. United States*, 704 F.2d 1222, 1225 (11th Cir. 1983)("An alien, for purposes of establishing venue, is presumed by law not to reside in any judicial district of the United States regardless of where the alien actually lives."); *Prudencio v. Hanselmann*, 178 F. Supp. 887, 890 (D. Minn. 1959)("[I]t is a basic venue principle that an alien is presumed not to reside in any district."). In *Ou v. Chertoff*, No. C-07-3676, 2008 WL 686869 (N.D. Cal. March 12, 2008), the U.S. District Court for the Northern District of California recently confronted a similar motion in a case with similar facts. After being granted asylum and in an effort to compel a decision regarding the issuance of travel documents, the plaintiffs—also aliens—brought suit against officers of the United States under the Mandamus Act, 28 U.S.C. § 1361 *et seq.*, and the Administrative Procedures Act, 5 U.S.C. § 701, *et seq*. The government argued in *Ou*, unlike in this case, that venue was exclusively proper in the District of Columbia and cited the longstanding rule that aliens lack a residence for purposes of venue. The district court agreed with the government and, after noting that the relevant events and omissions had

occurred in China, granted the government's motion to transfer to the District of Columbia. Thus, consistent with the analogous facts of *Ou*, venue is proper only in the District of Columbia.

Finally, a substantial part of the events or omissions that gave rise to the claim occurred in the District of Columbia—not in the Eastern District of Virginia as Defendants suggest. The key to resolving this dispute is appreciating the actual claims and understanding the nature of the relief sought. Mr. Al-Ahmed respectfully requests that this Court compel Defendants to adjudicate his asylum-based immigration forms. Mr. Al-Ahmed's Form I-485 application to adjust status has been pending for eight years. (Compl. 2.) Mr. Al-Ahmed's Form I-131 application for renewed travel authorization has been pending for nearly five years. (Compl. 2.) And Mr. Al-Ahmed's Form I-1765 application for renewed employment authorization has been pending for nearly four years. (Compl. 2.) The notice of receipt for each of these indicated that processing time would range from a few months to just over a year. (Compl. 4, 6, 7.) Reports of current processing times at the National Benefits Center, the local field office, and each of the national service centers confirm the accuracy of these estimates. (Exhibit 2.) Mr. Al-Ahmed has repeatedly made inquiries regarding the significant delays without any result. (Compl. 7.) In May 2008, Mr. Al-Ahmed was informed that the processing of his Form I-485 application "ha[d] been delayed," an absurd notice since he has been waiting for eight years, and has been given conflicting information regarding the actual whereabouts of his case. (Exhibit 1.)

Considering the extraordinary delays associated with each of the pending applications, this lack of action simply is not a result of the usual bureaucracy at a given service center. The nature of the delays strongly suggests that other factors are at work, and subject to determinations likely made by agency officials in the District of Columbia. That Mr. Al-Ahmed

WASH_4334488.1

may have submitted his fingerprint card to a particular service center or that the delay may be loosely "related to the activities of that USCIS field office located within the EDVA" (Defs.' Mem. Sup. Trans. 5.) is inadequate to meet the standard articulated by § 1391.  A variety of locales, including Chicago, Illinois, have been involved in Mr. Al-Ahmed case; mere involvement is not enough to establish a place as an appropriate venue.

> B.    ALTERNATIVELY, EVEN IF MR. AL-AHMED COULD HAVE BROUGHT HIS SUIT ELSEWHERE, PUBLIC AND PRIVATE INTERESTS WEIGH AGAINST TRANSFER.

Once a moving party has established that venue is appropriate in the alternative district, the party must then demonstrate that "considerations of convenience and the interest of justice weigh in favor of transfer."  *Mahoney v. Eli Lilly & Co.*, 545 F. Supp. 2d 123, 126 (D.D.C. 2008).  This involves a consideration and balancing of (1) the "convenience of witnesses and those public-interest factors of systematic integrity and fairness," and (2) the parties "private concerns [that] come under the heading of the 'interest of justice."  *Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988).  Because it is impossible for courts to establish and abide by a set of "fixed general rules," this inquiry necessarily demands a flexible, factually intensive, case specific determination. *Savoy Indus.*, 587 F.2d at 1154 (internal quotations omitted); *see also Ricoh Corp.*, 487 U.S. at 29-30; *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

> 1.    **PRIVATE CONCERNS OF THE PARTIES WEIGH AGAINST TRANSFER**.

As Defendants correctly suggest, courts in this jurisdiction have considered as relevant such private interest considerations as (a) the original choice of forum; (b) the location where the claim arose; (c) access to evidence and the convenience of the parties and witnesses; and (d) the suggested forum alternative.  *Robinson v. Eli Lilly & Co.*, 535 F. Supp. 2d 49, 52 (D.D.C. 2008);

5

*see also Mahoney*, 545 F. Supp. 2d at 126; *Elemary v. Holzmann*, 533 F. Supp. 2d 144, 149-50 (D.D.C. 2008); *Trout Unlimited*, 944 F. Supp. at 16. When considered in their entirety, these private factors weigh against transfer to the Eastern District of Virginia.

### *(1)    Mr. Al-Ahmed's original choice of forum deserves deference.*

There "can be no doubt that a plaintiff's choice of forum is entitled to at least some weight." *Savoy Indus.*, 587 F.2d at 1154-55; *see also Airport Working Group, Inc. v. U.S. Dep't of Defense*, 226 F. Supp. 2d 227, 229 (D.D.C. 2002). A court "may not transfer a case 'from a plaintiff's chosen forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff.'" *Elemary*, 533 F. Supp. 2d at 150 (quoting *Pain v. United Techs. Corp.*, 637 F.2d 775, 783 (D.C. Cir. 1980), *overruled in part on separate grounds by Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)). Admittedly, as Defendants suggest, deference is lessened when the plaintiff's forum choice "lacks meaningful ties to the controversy," *Islamic Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 144 (D.D.C. 1979), but such is not the case here. Mr. Al-Ahmed's choice of the District of Columbia deserves deference for three reasons.

First, when considering the actual controversy implicated by Mr. Al-Ahmed's Complaint, the District of Columbia, as the residence of all Defendants, has meaningful ties in a way that the Eastern District of Virginia does not. Mr. Al-Ahmed is not concerned with "a decision made by an agency field office." (Defs.' Mem. Sup. Trans. 6.) Unlike the parties in the cases that Defendants cite, the very core of Mr. Al-Ahmed's claim for relief is that the field office has not made a decision. *Cf. S. Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 87 (D.D.C. 2004) ("The primary issue in this case is . . . the [Bureau of Land Management's] Utah state office's proposal to sell the 21 parcels and the procedures it followed. . . . [T]he

WASH_4334488.1

actual lease decisions regarding the 21 parcels in dispute were made by officials in BLM's Utah office."); *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 68 (D.D.C. 2003)("Federal officials in Florida . . . signed the final record of decision authorizing the permits. . . . [T]here was no Washington-level involvement in any part of the decision-making process." (internal quotations and citations omitted)); *Airport Working Group*, 226 F. Supp. 2d at 228 ("Plaintiffs have challenged a decision by the Department of Navy, consistent with a recent ballot initiative approved by Orange County voters, designating the land for a 'great park' and mixed-use development."). Mr. Al-Ahmed has been waiting for a decision from the field office with regards to three separate applications for as many as eight years; there is no field office decision for this Court to consider. (Compl. 1-2.) (Exhibit 1.) At best, considering these exceptional delays, there is only the reasonable inference that determinations made by Defendants are responsible. Considering Defendants' residence for purposes of § 1391, these decisions are of particular interest to the District of Columbia.

Second, Mr. Al-Ahmed has substantial ties to the District of Columbia. He is the founder of and scholar at the Institute for Gulf Affairs, which is located in the District of Columbia. (Exhibit 3.) From this office, Mr. Al-Ahmed works as a consultant, writer, and news commentator, concentrating on such policy issues of international significance as security and terrorism; social, political and religious freedom; and human rights violations in Saudi Arabia. (Compl. 3.) (Exhibit 3.) The District of Columbia is the home of Mr. Al-Ahmed's professional and scholarly efforts each and every day of the year. *Cf. Elemary*, 533 F. Supp. 2d at 152 (concluding plaintiff "boasts a substantial connection to the district" that "weighs against transfer" when she lived and worked in the District of Columbia for only six months out of each year). Third, as previously explained, Mr. Al-Ahmed's personal domicile is immaterial for

7

purposes of establishing venue. *See supra* (discussing analogous case law from the Northern District of California regarding the relevance of an alien's domicile to venue considerations).

   ### *(2)   The District of Columbia is the location where his claims arose, which weighs against transfer.*

The core of Mr. Al-Ahmed's claims is that the remarkable delays associated with his applications necessarily implicates Defendants as agency figures beyond the local service center. Some of Mr. Al-Ahmed's applications have been pending for as many as eight years, an aberration that unavoidably involves action by Defendants. *See supra* (discussing the nature of his claims and the remarkably lengthy delay associated with his application). The mere presence of an administrative official in the decision-making process is sufficient to make venue in the District of Columbia proper. *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 128-29 (D.D.C. 2001)("[B]ecause federal government officials in the District of Columbia were involved in the decision to reissue the . . . grazing permit, this case has some national significance and has a nexus to the District of Columbia."); *Wilderness Soc'y v. Babbitt*, 104 F.Supp.2d 10 (D.D.C. 2000)(denying motion to transfer to the District of Alaska considering, in part, the Secretary of the Interior's involvement in the decision at issue). Even minimal involvement by agency officials may be relevant to establishing venue in the District of Columbia. *Savoy Indus.*, 587 F.2d at 1155 (rejecting claim that "nothing — nothing at all — was done in the District of Columbia (with the exception of a single trivial telephone call)," and finding it "plain . . . that some of the operative facts *did* occur within the District of Columbia" (emphasis in original)). Defendants involvement in Mr. Al-Ahmed's case is sufficient to make venue in the District of Columbia proper.

> **(3)    *Considering the proximity of the Eastern District of Virginia to the District of Columbia, arguments regarding "convenience" are irrelevant.***

This Court has rarely accepted arguments that proffered the "convenience" of the Eastern District of Virginia in comparison to the District of Columbia. As this Court noted recently, "The geographic distance between the Eastern District of Virginia's courthouse in Alexandria and the District of Columbia is small and it is unlikely that a transfer would materially affect the convenience of the parties or witnesses, or the ability to obtain sources of proof." *Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 34 (D.D.C. 2008); *see also Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 179 (D.D.C. 2007) (dismissing arguments of convenience in case involving motion to transfer to District of Maryland for parties located in greater Washington, D.C. metropolitan area). Considering the driving distance between the Eastern District of Virginia and the District of Columbia is only some ten miles, Defendants arguments regarding convenience are, at best, disingenuous. (Exhibit 5.) *See Great Socialist People's Libyan Arab Jamahiriya v. Miski*, 496 F. Supp. 2d 137, 145 n.6 (D.D.C. 2007) (mocking convenience argument in a case involving a motion to transfer to the District of Maryland when "Google Maps indicates that the distance between Washington, D.C. and Annapolis, M.D. is 32.5 miles and, a subpoena may be served . . . at any place . . . [if it] is within 100 miles of the place of the deposition, hearing, trial, production, or inspection"(internal citations and quotations omitted)). Furthermore, in choosing the District of Columbia, Mr. Al-Ahmed selected a forum that was convenient. Defendants reside in the District of Columbia. Mr. Al-Ahmed similarly spends his working days in the District of Columbia. (Exhibit 3.) That the District of Columbia is convenient weighs against transfer. *See Akiachak Native Community v. U.S. Dep't of Interior*, 502 F. Supp. 2d 64, 68 (D.D.C. 2007) (noting in a case involving a

suggested transfer to the District of Alaska that "Akiachak has chosen a forum that is advantageous for both of its party opponents since both are located in the District").

Finally, relevant sources of proof in this case will likely comprise documentation from the offices of the Defendants, making the District of Columbia a convenient venue. *See Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 12 (D.D.C. 2007); *Akiachak Native Community*, 502 F. Supp. 2d at 68. Even if Defendants "have business records or witnesses that are located [outside the District of Columbia], [they do] not explain why the location of those records and witnesses require the transfer of this action," a failure this Court has already dismissed as illegitimate. *Miski*, 496 F. Supp. 2d at 145. Defendants, as in *Miski*, have not demonstrated that venue in the District of Columbia would create a hardship or that "any evidence or witnesses relevant to this case would be unreasonably difficult to secure for trial in the District of Columbia or are outside of the subpoena power of this Court." *Id.*; *see also Wilderness Soc'y*, 104 F. Supp. 2d at 15 ("While it would be arguably more convenient for defendants to litigate this suit in Alaska, the defendants have not established any particular hardship in litigating this suit in the District of Columbia, beyond transporting a large administrative record. . . . Accordingly, this factors does not weigh in favor of transfer." (internal citation omitted)). Moreover, the "convenience of witnesses 'is considered only to the extent that the witnesses may actually be unavailable for trial in one of the fora.'" *Mahoney*, 545 F. Supp. 2d at 127 (quoting *Brannen v. Nat'l R.R. Passenger Corp.*, 403 F. Supp. 2d 89, 94 (D.D.C. 2005)). Because issues of convenience and ease of access to proof are largely immaterial in this case, this weighs against transfer.

### *(4)    Other private considerations weigh against transfer.*

This Court has disfavored motions to transfer that appear to be motivated by a desire to relocate to a more favorable forum. *Greater Yellowstone Coal.*, 180 F. Supp. 2d at 130 ("The plausible possibility that the defendants are using Section 1404(a) as a means of forum shopping weighs against granting the defendants' motion.").  Moreover, such questions are not overcome simply because Defendants contend that they have "legitimate reasons for seeking transfer." (Defs.' Mem. Sup. Trans. 7.)  Defendants lack of a sound reason for insisting Mr. Al-Ahmed's matter must be moved only ten miles should be construed against them.. *See Ferens v. John Deere Co.,* 494 U.S. 516, 527-28 (1990) (discussing concerns with "forum shopping").  Furthermore, transferring this matter to the Eastern District of Virginia would only result in further delay, an objectionable notion considering that the Defendants' egregious delay in adjudicating Mr. Al-Ahmed's applications is one of the key issues presented.

### 2.    PUBLIC INTEREST CONCERNS WEIGH AGAINST TRANSFER.

When evaluating a motion to transfer, a court must also consider whether that movant has demonstrated that public interest considerations, including systematic integrity and fairness, compel the move.  Relevant public interests include the "local interest in making local decisions about local controversies," a transferee court's familiarity with the applicable law, and the congestion of the docket of the transferee and transferor courts. *Robinson*, 535 F. Supp. 2d at 52; *Mahoney*, 545 F. Supp. 2d at 126; *Elemary*, 533 F. Supp. 2d at 149-50; *Trout Unlimited*, 944 F. Supp. at 16.  With little reasoning or evidence, Defendants summarily assert that public interest considerations "[q]uite clearly favor transfer."  (Defs.' Mem. Sup. Trans. 7.)  As evidenced by the cursory nature of their arguments, Defendants assertions are incorrect.

11

First, in light of the fact that Mr. Al-Ahmed is a renowned scholar, the sole issue in this case—whether this Court should compel various federal agencies to adjudicate Mr. Al-Ahmed's applications, which have been egregiously delayed—is an issue of national importance and of particular interest to the District of Columbia.  Mr. Al-Ahmed is a renowned expert in issues related to national security, terrorism, and human rights violations in Saudi Arabia.  He has been invited to speak at Princeton University, the Hudson Institute in Washington, D.C., and the Meridian International Center in Washington, D.C.  (Exhibit 3.)  He frequently consults with such prominent media outlets as CNN, Fox News, the *Washington Post*, and the Associated Press.  (Exhibit 3.).  Most recently, Mr. Al-Ahmed published a piece in the *International Herald Tribune*.  (Exhibit 4.)  Considering Mr. Al-Ahmed's international prominence, this is an issue with national visibility of particular interest to the people of the District of Columbia—a town that not only hosts Mr. Al-Ahmed's  work, but whose lifeblood is policy, government, and international affairs.  This is simply not a local issue as Defendants cursorily conclude, and the Eastern District of Virginia has no particular interest in this controversy.

Second, the issue in this case exclusively involves federal rules and regulations; because all federal courts are presumably equally familiar with these rules and regulations and equally skilled at their interpretation, transfer is unnecessary.  *See STG Int'l, Inc.*, 532 F. Supp. 2d at 34.  Defendants fail to explain why "the transferee's familiarity with government laws . . . [q]uite clearly . . . favor[s] transfer."  (Defs'. Mem. Sup. Trans. 7.)  Ordinarily, boasting an alternative court's familiarity with governing laws is appropriate in federal cases that involve diversity jurisdiction and the application of state law.  *See Greater Yellowstone Coal.*, 180 F. Supp. 2d at 129; *Wilderness Soc'y*, 104 F. Supp. 2d at 16.  This case does not implicate state law

12

in anyway, however, and there is no advantage that the Eastern District of Virginia could offer in this respect.

Finally, although Defendants argue that the "relative congestion of the calendars . . . [q]uite clearly . . . favor[s] transfer," they fail to provide any evidence in support.  This Court has previously rejected unsubstantiated claims that transfer to the Eastern District of Virginia would result in a faster resolution of the case.  *STG Int'l, Inc.*, 532 F. Supp. 2d at 34 ("STG presents no evidence to support this claim, rendering this factor neutral.").  *See also Green v. Footlocker Retail, Inc.*, No. 04-1875, 2005 WL 1330686, at *3 (D.D.C. June 3, 2005) (stating that the defendants had not established any difference between the Eastern District of Virginia and the District of Columbia "in terms of the size of their dockets or their efficiency"); *Shenandoah Assocs. Ltd. P'ship v. Tirana*, 182 F. Supp. 2d 14, 26 (D.D.C. 2001) (finding unpersuasive the argument that the District of Columbia is more congested than the Eastern District of Virginia absent evidence).  The sheer speed of processing is not the only consideration that is relevant when evaluating a court's docket.  This Court has a wealth of experience with cases related to immigration law and international issues and thus, could promptly and judiciously handle the issues presented in this case.  *See Hamandi v. Chertoff*, No. 07-2153, 2008 WL 1958931 (D.D.C. May 6, 2008); *Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39 (D.D.C. 2008); *Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of Treasury*, 498 F. Supp. 2d 150 (D.D.C. 2007); *Ho v. United States*, 374 F. Supp. 2d 82 (2005); *F.L. v. Thompson*, 293 F. Supp. 2d 86 (D.D.C. 2003).  Without any evidence to the contrary regarding the congestion of court calendars, the experience of this Court weighs against transfer.

WASH_4334488.1

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to transfer venue should be denied.

Dated:  June 27, 2008                                    Respectfully submitted,


                                                    /s/ Simon E. Dance
                                                    Simon E. Dance (D.C. Bar No. 436432)
                                                    FOLEY & LARDNER LLP
                                                    3000 K Street, N.W., Suite 500
                                                    Washington, D.C. 20007-5143
                                                    Telephone 202.672.5300
                                                    Facsimile 202.672.5399

14

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ALI AL-AHMED,                                   )
                                                )
        Plaintiff,                        )
                                                )
     v.                                    )
                                                )
MICHAEL CHERTOFF, Secretary, U.S.               )    Civil Action No.  08-0678 (ESH)
Department of Homeland Security, et. Al.,        )
                                                )
        Defendants.                       )
                                                )
                                                )

### ORDER

       UPON CONSIDERATION of Defendants' Motion to Transfer this action to the United States District Court for the Eastern District of Virginia, and Plaintiff's Memorandum of in Opposition, it is hereby:

       ORDERED that Defendants' Motion is DENIED.

SIGNED:

_____                        _____
Date                                 ELLEN SEGAL HUVELLE
                                     United States District Judge

WASH_4306017.2

**EXHIBIT 1**



U.S. Department of Homeland Security
USCIS
2675 Prosperity Avenue
Fairfax, VA 22031-4906

## U.S. Citizenship
## and Immigration
## Services

Thursday, May 29, 2008

ALI ALAHMED
1900 L STREET NW APT. 309
WASHINGTON DC 20036

Dear Ali Alahmed:

On 05/23/2008 you, or the designated representative shown below, contacted us about your case. Some of the key information given to us at that time was the following:

| | |
|---|---|
| **Caller indicated they are:** | Applicant or Petitioner |
| **Attorney Name:** | Information not available |
| **Case type:** | I485 |
| **Filing date:** | 11/15/1999 |
| **Receipt #:** | LIN-00-053-50339 |
| **Beneficiary (if you filed for someone else):** | Information not available |
| **Your USCIS Account Number (A-number):** | A076844699 |
| **Type of service requested:** | Other |

The status of this service request is:

The processing of your case has been delayed. A check of our records establishes that your case is not yet ready for a decision. You can make a info pass appointment on the website at www.uscis.gov to visit your local office to discss your case.

If you have any further questions, please call the National Customer Service Center at 1-800-375-5283.

Please remember: By law, every person who is not a U.S. citizen and who is over the age of 14 must also notify the Department of Homeland Security within 10 days from when they move (persons in "A" or "G" nonimmigrant status are exempt from this requirement). If you have moved, please complete a Form AR-11 and mail it to the address shown on that form. If you do not have this form, you can download it from our website or you can call the National Customer Service Center at 1-800-375-5283 and we can order one for you. If you move, please call us with your new address information as soon as your move is complete. If you have already called us and given us this information, you do not need to call again.

U.S. Citizenship and Immigration Services



**Department of Homeland Security**
Chicago Asylum Office
401 South LaSalle Street, 8th Floor
Chicago, IL 60605

# U.S. Citizenship and Immigration Services

## STATUS INQUIRY RESPONSE

Name:     Ali Al-Ahmed                          Date:     June 3, 2008

Address:     1900 L Street, NW, Suite 309        File #:     A076 844 699

          Washington, DC 20036

The status of your case is checked below:

[ ]   Your application is pending in this office. You will be notified by mail of any decisions relating to your case. You need to notify us of any change of address to prevent delays in receiving further notifications regarding your case.

[ ]   We are actively processing this case. However, we have to perform additional review on this case and this has caused a longer processing time. If you do not receive a decision or other notice of action from us within 6 months of this inquiry response, please contact this office again via mail.

[ ]   We are awaiting the results of a mandatory, confidential investigation of your identity and background. There is no need to contact our office. You will be notified as soon as this investigation is complete. You may be contacted to submit another set of fingerprints for this investigation.

[ ]   Your asylum application was approved on _____. Notice of this action was mailed to your last known address. This office has completed all action on your case and your file is no longer at this office. If the U.S. Postal Service returned your approval notice, it was placed in the file, and your local office can assist you in obtaining your approval notice. If your approval notice was not returned, you must file a Form G-639 (FOIA request) to obtain a copy of the notice and Form I-102 to obtain a new I-94 card. Please refer to the application instructions and send your application to the appropriate office for adjudication. DO NOT MAIL THESE FORMS BACK TO THE ASYLUM OFFICE.

[ ]   There is no record of your being the authorized representative of the applicant. To protect the confidentiality of the applicant, you must submit a completed Form G-28 with your inquiry.

[ ]   Your case has been Administratively Closed for the following reason:
     [ ]     The address you provided the Service was no longer valid and mail sent to your address was returned undeliverable.
     [ ]     You failed to appear for an interview on _____.

[ ]   You are in removal proceedings or your application for asylum was referred to the Immigration Court. This office no longer has jurisdiction over your asylum case. Please contact the Immigration Court having jurisdiction over your case.

[ ]   Please verify your current address. Our records reflect your last known address to be: _____ Please note that the Form I-589 instructions state that while an asylum case is pending, the applicant must notify the ASYLUM OFFICE of any changes of address within ten days. Address changes mailed to the P.O. Box in London, Kentucky are NOT forwarded to this office, nor are they updated in the system used to track Asylum applications. The address that you provide on the application, or the last change of address notification you submitted to this office, will be used for mailing. Any notices mailed to that address constitute adequate service.

[ ]   This office has completed all processing on your case and your file is no longer at this office. Service records indicate that your Nunc Pro Tunc asylum case was granted by this office on _____. Your file was returned to the _____ Service Center, to continue processing on your permanent residency application. Please contact the _____ Service Center for further information regarding your permanent residency application.

[X]   **Other:**   **Service records indicate that your asylum case was granted on August 13, 1998. This office completed all processing on your case and transferred your file to the National Records Center at that time. This office does not adjudicate Form I-485, and does not have your file. The Service Center may have transferred your I-485 to the Chicago DISTRICT Office on November 28, 2000, but it was NOT transferred to the Chicago ASYLUM Office. Your local office can assist you in finding out the status of your pending application. Please make an INFOPASS appointment at WWW.USCIS.GOV to speak with an Information Officer at your local office.**

If you have any questions, please contact our office at the address listed above. **Always notify this office of any address changes. Include your file number in any correspondence sent to this office.**

# EXHIBIT 2



Home   Contact Us   Site Map   FAQ

Search   
Advanced Search

Services & Benefits    Immigration Forms    Laws & Regulations    About USCIS    Education & Resource    Press Room

---

Print This Page    Back

# U.S. Citizenship and Immigration Services
# National Benefits Center Processing Dates
# Posted June 15, 2008

The processing times shown below are a tool for our customers to gauge our current processing times. When applications and petitions are completed within our target timeframes, that goal will be shown in the data display.

The processing times shown below are for applications that have just been completed. If you have just filed your application, these timeframes may not reflect how long your application will take to be completed. We encourage you to check this page periodically before inquiring about your case. The processing times are updated monthly.

USCIS has received a significant increase in the number of applications filed. In July and August, nearly 2.5 million applications and petitions of all types were received. This compares to 1.2 million applications and petitions received in the same time period last year. This fiscal year, we received 1.4 million applications for naturalization; nearly double the volume we received the year before. The agency is working to improve processes and focus increased resources, including hiring approximately 1,500 new employees, to address this workload.

As a result, average processing times for certain application types may be longer. In particular, naturalization applications filed after June 1, 2007 may take approximately 13-15 months to process.

We offer a variety of services after you file.  For example, for most kinds of cases you can check the status of your case online.

For more information about when and how to contact us, whether your case is outside our processing time or if there are other issues, please see our customer guide –

Case Services - How do I... know what kind of services are available to me after I file my application or petition?

Processing Dates for the **National Benefits Center** Posted June 15, 2008

| Form | Title | Classification or Basis for Filing | Processing Timeframe |
|---|---|---|---|
| I-102 | Application for Replacement/Initial Nonimmigrant Arrival/Departure Record | Initial issuance or replacement of a Form I-94 | March 27, 2008 |
| I-131 | Application for Travel Document | All other applicants for advance parole | March 27, 2008 |
| I-539 | Application to Extend/Change Nonimmigrant Status | All other extension applications | March 27, 2008 |
| I-765 | Application for Employment Authorization | Based on a pending I-485 adjustment | March 22, 2008 |

| | | application [(c)(9)] | |
|---|---|---|---|
| I-765 | Application for Employment Authorization | All other applications for employment authorization | March 22, 2008 |
| I-817 | Application for Family Unity Benefits | Voluntary departure under the family unity program | December 28, 2007 |
| I-824 | Application for Action on an Approved Application or Petition | To request further action on an approved application or petition | December 28, 2007 |

[ Print This Page ]    [ Back ]

**06-21-2008 02:50 PM EDT**



Home   Contact Us   Site Map   FAQ

Search



Advanced Search

Services & Benefits    Immigration Forms    Laws & Regulations    About USCIS    Education & Resource    Press Room

---

[ Print This Page ]    [ Back ]

## U.S. Citizenship and Immigration Services
## Washington DC Processing Dates
## Posted June 15, 2008

The processing times shown below are a tool for our customers to gauge our current processing times. When applications and petitions are completed within our target timeframes, that goal will be shown in the data display.

The processing times shown below are for applications that have just been completed. If you have just filed your application, these timeframes may not reflect how long your application will take to be completed. We encourage you to check this page periodically before inquiring about your case. The processing times are updated monthly.

USCIS has received a significant increase in the number of applications filed. In July and August, nearly 2.5 million applications and petitions of all types were received. This compares to 1.2 million applications and petitions received in the same time period last year. This fiscal year, we received 1.4 million applications for naturalization; nearly double the volume we received the year before. The agency is working to improve processes and focus increased resources, including hiring approximately 1,500 new employees, to address this workload.

As a result, average processing times for certain application types may be longer. In particular, naturalization applications filed after June 1, 2007 may take approximately 13-15 months to process.

We offer a variety of services after you file.  For example, for most kinds of cases you can check the status of your case online.

For more information about when and how to contact us, whether your case is outside our processing time or if there are other issues, please see our customer guide –

Case Services - How do I...  know what kind of services are available to me after I file my application or petition?

District Office Processing Dates for **Washington DC** Posted June 15, 2008

| Form | Form Name | Processing Timeframe: |
|------|-----------|----------------------|
| I-131 | Application for Travel Documents | March 17, 2008 |
| I-485 | Application to Register Permanent Residence or Adjust Status | April 10, 2007 |
| I-600 | Petition to Classify Orphan as an Immediate Relative | December 19, 2007 |
| I-600A | Application for Advance Processing of Orphan Petition | December 19, 2007 |
| I-765 | Application for Employment Authorization | March 17, 2008 |
| N-400 | Application for Naturalization | February 26, 2007 |
| N-600 | Application for Certification of Citizenship | December 18, 2007 |

[ Print This Page ]    [ Back ]

**06-21-2008 02:49 PM EDT**

Home   Contact Us   Privacy Policy   Website Policies   NoFEAR   Freedom Of Information Act   FirstGov

U.S. Department of Homeland Security



Home    Contact Us    Site Map    FAQ

Search 

Advanced Search

Services & Benefits    Immigration Forms    Laws & Regulations    About USCIS    Education & Resource    Press Room

---

Print This Page    Back

# U.S. Citizenship and Immigration Services
# Nebraska Service Center Processing Dates
# Posted June 15, 2008

The processing times shown below are a tool for our customers to gauge our current processing times. When applications and petitions are completed within our target timeframes, that goal will be shown in the data display.

The processing times shown below are for applications that have just been completed. If you have just filed your application, these timeframes may not reflect how long your application will take to be completed. We encourage you to check this page periodically before inquiring about your case. The processing times are updated monthly.

USCIS has received a significant increase in the number of applications filed. In July and August, nearly 2.5 million applications and petitions of all types were received. This compares to 1.2 million applications and petitions received in the same time period last year. This fiscal year, we received 1.4 million applications for naturalization; nearly double the volume we received the year before. The agency is working to improve processes and focus increased resources, including hiring approximately 1,500 new employees, to address this workload.

As a result, average processing times for certain application types may be longer. In particular, naturalization applications filed after June 1, 2007 may take approximately 13-15 months to process.

We offer a variety of services after you file.  For example, for most kinds of cases you can check the status of your case online.

For more information about when and how to contact us, whether your case is outside our processing time or if there are other issues, please see our customer guide –

Case Services - How do I... know what kind of services are available to me after I file my application or petition?

Service Center Processing Dates for **Nebraska Service Center** Posted June 15, 2008

| Form | Title | Classification or Basis for Filing | Processing Timeframe |
|------|-------|-----------------------------------|---------------------|
| I-90 | Application to Replace Permanent Resident Card | Initial issuance or replacement | December 20, 2007 |
| I-90 | Application to Replace Permanent Resident Card | 10-year renewal | August 05, 2007 |
| I-90A | Application to Replace Permanent Resident Card | Initial issuance or replacement for Special Agricultral Workers (SAW) | October 15, 2007 |
| I-102 | Application for Replacement/Initial | Initial issuance or replacement of a Form I- | March 17, |

| | Nonimmigrant Arrival/Departure Record | 94 | 2008 |
|---|---|---|---|
| **I-129** | Petition for A Nonimmigrant Worker | H-1B - Specialty occupation - Visa to be issued abroad | April 16, 2008 |
| **I-129** | Petition for A Nonimmigrant Worker | H-1B - Specialty occupation - Change of status in the U.S. | April 16, 2008 |
| **I-129** | Petition for A Nonimmigrant Worker | H-1B - Specialty occupation - Extension of stay in the U.S. | April 16, 2008 |
| **I-129** | Petition for A Nonimmigrant Worker | H-2A - Temporary workers | May 16, 2008 |
| **I-129** | Petition for A Nonimmigrant Worker | H-2B - Other temporary workers | May 16, 2008 |
| **I-129** | Petition for A Nonimmigrant Worker | H-3 - Temporary trainees | April 16, 2008 |
| **I-129** | Petition for A Nonimmigrant Worker | L - Intracompany transfers | April 16, 2008 |
| **I-129** | Petition for A Nonimmigrant Worker | Blanket L | April 16, 2008 |
| **I-129** | Petition for A Nonimmigrant Worker | O - Extraordinary ability | April 16, 2008 |
| **I-129** | Petition for A Nonimmigrant Worker | P - Athletes, artists, and entertainers | April 16, 2008 |
| **I-129** | Petition for A Nonimmigrant Worker | Q - Cultural exchange visitors and exchange visitors participating in the Irish Peace process | April 16, 2008 |
| **I-129** | Petition for A Nonimmigrant Worker | R - Religious occupation | April 16, 2008 |
| **I-129** | Petition for A Nonimmigrant Worker | TN - North American Free Trade Agreement (NAFTA) professional | April 16, 2008 |
| **I-131** | Application for Travel Document | Permanent resident applying for a re-entry permit | July 30, 2007 |
| **I-131** | Application for Travel Document | Refugee or aslyee applying for a refugee travel document | July 30, 2007 |
| **I-131** | Application for Travel Document | Haitian Refugee Immigrant Fairness Act (HRIFA) principal applying for advance parole | March 17, 2008 |
| **I-131** | Application for Travel Document | Haitian Refugee Immigrant Fairness Act (HRIFA) dependent applying for advance parole | March 17, 2008 |
| **I-131** | Application for Travel Document | All other applicants for advance parole | March 17, 2008 |
| **I-140** | Immigrant Petition for Alien Worker | Extraordinary ability | March 13, 2007 |
| **I-140** | Immigrant Petition for Alien Worker | Outstanding professor or researcher | June 14, 2007 |
| **I-140** | Immigrant Petition for Alien Worker | Multinational executive or manager | May 10, 2007 |
| **I-140** | Immigrant Petition for Alien Worker | Schedule A Nurses | February 15, 2007 |
| **I-140** | Immigrant Petition for Alien Worker | Advanced degree or exceptional ability | July 18, 2007 |
| **I-140** | Immigrant Petition for Alien Worker | Advanced degree or exceptional ability requesting a National Interest Waiver | February 27, 2007 |
| **I-140** | Immigrant Petition for Alien Worker | Skilled worker or professional | March 22, 2007 |

| I-140 | Immigrant Petition for Alien Worker | Unskilled worker | June 12, 2007 |
|---|---|---|---|
| I-212 | Application for Permission to Reapply for Admission into the U.S. After Deportation or Removal | Readmission after deportation or removal | December 18, 2007 |
| I-360 | Petition for Amerasian, Widow(er), or Special Immigrant | All other special immigrants | December 18, 2007 |
| I-485 | Application to Register Permanent Residence or to Adjust Status | Employment-based adjustment applications | July 28, 2007 |
| I-485 | Application to Register Permanent Residence or to Adjust Status | Based on grant of asylum more than 1 year ago | May 24, 2007 |
| I-485 | Application to Register Permanent Residence or to Adjust Status | Based on refugee admission more than 1 year ago | March 22, 2007 |
| I-485 | Application to Register Permanent Residence or to Adjust Status | Under the Haitian Refugee Immigrant Fairness Act (HRIFA) | August 20, 2007 |
| I-485 | Application to Register Permanent Residence or to Adjust Status | Under the Indochinese Adjustment Act | September 11, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | Change of status to H or L dependents | June 14, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | Change status to the F or M academic or vocational student categories | June 14, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | Change Status to the J exchange visitor category | June 14, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | All other change of status applications | June 14, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | Extension of stay for H and L dependents | June 14, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | Extension of Stay for F or M academic or vocational students | June 14, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | Extension of Stay for J exchange visitors | June 14, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | All other extension applications | June 14, 2007 |
| I-612 | Application for Waiver of the Foreign Residence Requirement | Application for a waiver of the 2-year foreign residence requirement based on exceptional hardship or persecution | August 06, 2007 |
| I-730 | Refugee/Asylee Relative Petition | Petition for accompanying family members of a refugee or an asylee | January 01, 2007 |
| I-751 | Petition to Remove the Conditions on Residence | Removal of lawful permanent resident conditions (spouses of U.S. citizens and lawful permanent residents | August 10, 2007 |
| I-765 | Application for Employment Authorization | Based on an approved asylum application [(a)(5)] | March 31, 2008 |
| I-765 | Application for Employment Authorization | Based on a request by a qualified F-1 academic student. [(c)(3)] | March 17, 2008 |
| I-765 | Application for Employment Authorization | Based on a pending asylum application [(c) | March 31, |

| | | | (8)] | 2008 |
|---|---|---|---|---|
| **I-765** | Application for Employment Authorization | Based on a pending I-485 adjustment application [(c)(9)] | | March 17, 2008 |
| **I-765** | Application for Employment Authorization | All other applications for employment authorization | | March 17, 2008 |
| **I-817** | Application for Family Unity Benefits | Voluntary departure under the family unity program | | December 18, 2007 |
| **I-824** | Application for Action on an Approved Application or Petition | To request further action on an approved application or petition | | April 08, 2007 |

[ Print This Page ]   [ Back ]

Home   Contact Us   Privacy Policy   Website Policies   NoFEAR   Freedom Of Information Act   FirstGov

U.S. Department of Homeland Security



Home   Contact Us   Site Map   FAQ

Search
Advanced Search



Services & Benefits    Immigration Forms    Laws & Regulations    About USCIS    Education & Resource    Press Room

Print This Page     Back

## U.S. Citizenship and Immigration Services
## California Service Center Processing Dates
## Posted June 15, 2008

The processing times shown below are a tool for our customers to gauge our current processing times. When applications and petitions are completed within our target timeframes, that goal will be shown in the data display.

The processing times shown below are for applications that have just been completed. If you have just filed your application, these timeframes may not reflect how long your application will take to be completed. We encourage you to check this page periodically before inquiring about your case. The processing times are updated monthly.

USCIS has received a significant increase in the number of applications filed. In July and August, nearly 2.5 million applications and petitions of all types were received. This compares to 1.2 million applications and petitions received in the same time period last year. This fiscal year, we received 1.4 million applications for naturalization; nearly double the volume we received the year before. The agency is working to improve processes and focus increased resources, including hiring approximately 1,500 new employees, to address this workload.

As a result, average processing times for certain application types may be longer. In particular, naturalization applications filed after June 1, 2007 may take approximately 13-15 months to process.

We offer a variety of services after you file.  For example, for most kinds of cases you can check the status of your case online.

For more information about when and how to contact us, whether your case is outside our processing time or if there are other issues, please see our customer guide –

Case Services - How do I...  know what kind of services are available to me after I file my application or petition?

Service Center Processing Dates for **California Service Center** Posted June 15, 2008

| Form | Title | Classification or Basis for Filing | Processing Timeframe |
|------|-------|-----------------------------------|----------------------|
| I-90 | Application to Replace Permanent Resident Card | Initial issuance or replacement | August 13, 2006 |
| I-102 | Application for Replacement/Initial Nonimmigrant Arrival/Departure Record | Initial issuance or replacement of a Form I-94 | March 17, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | H-1B - Specialty occupation - Visa to be issued abroad | April 16, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | H-1B - Specialty occupation - Change of | April 16, 2008 |

| | | status in the U.S. | |
|---|---|---|---|
| I-129 | Petition for A Nonimmigrant Worker | H-1B - Specialty occupation - Extension of stay in the U.S. | April 16, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | H-2A - Temporary workers | May 11, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | H-2B - Other temporary workers | May 16, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | H-3 - Temporary trainees | April 16, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | E - Treaty traders and investors | April 16, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | L - Intracompany transfers | April 16, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | Blanket L | April 16, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | O - Extraordinary ability | April 16, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | P - Athletes, artists, and entertainers | April 16, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | Q - Cultural exchange visitors and exchange visitors participating in the Irish Peace process | April 16, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | R - Religious occupation | April 16, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | TN - North American Free Trade Agreement (NAFTA) professional | April 16, 2008 |
| I-129F | Petition for Alien Fiance(e) | K-1/K-2 - Not yet married - fiance and/or dependent child | December 18, 2007 |
| I-129F | Petition for Alien Fiance(e) | K-3/K-4 - Already married - spouse and/or dependent child | December 18, 2007 |
| I-130 | Petition for Alien Relative | U.S. citizen filing for a spouse, parent, or child under 21 | December 18, 2007 |
| I-130 | Petition for Alien Relative | U.S. citizen filing for an unmarried son or daughter over 21 | January 17, 2003 |
| I-130 | Petition for Alien Relative | U.S. citizen filing for a married son or daughter over 21 | April 30, 2001 |
| I-130 | Petition for Alien Relative | U.S. citizen filing for a brother or sister | April 30, 2001 |
| I-130 | Petition for Alien Relative | Permanent resident filling for a spouse or child under 21 | January 01, 2005 |
| I-130 | Petition for Alien Relative | Permanent resident filling for an unmarried son or daughter over 21 | February 07, 2005 |
| I-131 | Application for Travel Document | All other applicants for advance parole | September 14, 2007 |
| I-212 | Application for Permission to Reapply for Admission into the U.S. After Deportation or Removal | Readmission after deportation or removal | December 18, 2007 |
| I-360 | Petition for Amerasian, Widow(er), or Special Immigrant | All other special immigrants | November 21, 2007 |
| I-485 | Application to Register Permanent Residence or to Adjust Status | Employment-based adjustment applications | April 04, 2006 |
| I-526 | Immigrant Petition By Alien Entrepreneur | For use by an entrepreneur who wishes to immigrate to the United States | November 21, 2007 |
| I-539 | Application to Extend/Change | Change of status to H or L dependents | March 17, |

| | | | 2008 |
|---|---|---|---|
| I-539 | Application to Extend/Change Nonimmigrant Status | Change status to the F or M academic or vocational student categories | March 17, 2008 |
| I-539 | Application to Extend/Change Nonimmigrant Status | Change Status to the J exchange visitor category | March 17, 2008 |
| I-539 | Application to Extend/Change Nonimmigrant Status | All other change of status applications | March 17, 2008 |
| I-539 | Application to Extend/Change Nonimmigrant Status | Extension of stay for H and L dependents | March 17, 2008 |
| I-539 | Application to Extend/Change Nonimmigrant Status | Extension of Stay for F or M academic or vocational students | March 17, 2008 |
| I-539 | Application to Extend/Change Nonimmigrant Status | Extension of Stay for J exchange visitors | March 17, 2008 |
| I-539 | Application to Extend/Change Nonimmigrant Status | All other extension applications | March 17, 2008 |
| I-612 | Application for Waiver of the Foreign Residence Requirement | Application for a waiver of the 2-year foreign residence requirement based on exceptional hardship or persecution | July 03, 2007 |
| I-751 | Petition to Remove the Conditions on Residence | Removal of lawful permanent resident conditions (spouses of U.S. citizens and lawful permanent resident | December 18, 2007 |
| I-765 | Application for Employment Authorization | Based on a request by a qualified F-1 academic student. [(c)(3)] | March 17, 2008 |
| I-765 | Application for Employment Authorization | Based on a pending asylum application [(c)(8)] | March 28, 2008 |
| I-765 | Application for Employment Authorization | Based on a pending I-485 adjustment application [(c)(9)] | March 17, 2008 |
| I-765 | Application for Employment Authorization | Based on TPS for Honduras/Nicaragua [(c)(19), (a)(12)] | March 17, 2008 |
| I-765 | Application for Employment Authorization | Based on TPS for El Salvador [(c)(19)(a)(12)] | March 17, 2008 |
| I-765 | Application for Employment Authorization | All other applications for employment authorization | March 17, 2008 |
| I-817 | Application for Family Unity Benefits | Voluntary departure under the family unity program | June 08, 2007 |
| I-824 | Application for Action on an Approved Application or Petition | To request further action on an approved application or petition | December 18, 2007 |
| I-829 | Petition by Entrepreneur to Remove Conditions | Removal of lawful permanent resident conditions (immigrant investors) | July 22, 2006 |
| I-829 | Petition by Entrepreneur to Remove Conditions | Removal of lawful permanent resident conditions (immigrant investors) based on PL107-273 | September 10, 1997 |

[ Print This Page ]   [ Back ]

Home   Contact Us   Privacy Policy   Website Policies   NoFEAR   Freedom Of Information Act   FirstGov

U.S. Department of Homeland Security

Case 1:08-cv-00378-ESH  Document 4  Filed 06/27/2008



Search                  
Advanced Search

Services & Benefits   Immigration Forms   Laws & Regulations   About USCIS   Education & Resource   Press Room

Print This Page    Back

# U.S. Citizenship and Immigration Services
## Texas Service Center Processing Dates
## Posted June 15, 2008

The processing times shown below are a tool for our customers to gauge our current processing times. When applications and petitions are completed within our target timeframes, that goal will be shown in the data display.

The processing times shown below are for applications that have just been completed. If you have just filed your application, these timeframes may not reflect how long your application will take to be completed. We encourage you to check this page periodically before inquiring about your case. The processing times are updated monthly.

USCIS has received a significant increase in the number of applications filed. In July and August, nearly 2.5 million applications and petitions of all types were received. This compares to 1.2 million applications and petitions received in the same time period last year. This fiscal year, we received 1.4 million applications for naturalization; nearly double the volume we received the year before. The agency is working to improve processes and focus increased resources, including hiring approximately 1,500 new employees, to address this workload.

As a result, average processing times for certain application types may be longer. In particular, naturalization applications filed after June 1, 2007 may take approximately 13-15 months to process.

We offer a variety of services after you file.  For example, for most kinds of cases you can check the status of your case online.

For more information about when and how to contact us, whether your case is outside our processing time or if there are other issues, please see our customer guide –

Case Services - How do I…  know what kind of services are available to me after I file my application or petition?

Service Center Processing Dates for **Texas Service Center** Posted June 15, 2008

| Form | Title | Classification or Basis for Filing | Processing Timeframe |
|---|---|---|---|
| I-90 | Application to Replace Permanent Resident Card | Initial issuance or replacement | February 16, 2008 |
| I-102 | Application for Replacement/Initial Nonimmigrant Arrival/Departure Record | Initial issuance or replacement of a Form I-94 | March 17, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | H-1B - Specialty occupation - Visa to be issued abroad | December 26, 2007 |

| I-129 | Petition for A Nonimmigrant Worker | H-1B - Specialty occupation - Change of status in the U.S. | December 26, 2007 |
|---|---|---|---|
| I-129 | Petition for A Nonimmigrant Worker | H-1B - Specialty occupation - Extension of stay in the U.S. | December 26, 2007 |
| I-129 | Petition for A Nonimmigrant Worker | H-2A - Temporary workers | May 16, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | H-2B - Other temporary workers | May 16, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | H-3 - Temporary trainees | December 26, 2007 |
| I-129 | Petition for A Nonimmigrant Worker | E - Treaty traders and investors | December 26, 2007 |
| I-129 | Petition for A Nonimmigrant Worker | L - Intracompany transfers | April 16, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | Blanket L | December 26, 2007 |
| I-129 | Petition for A Nonimmigrant Worker | O - Extraordinary ability | December 26, 2007 |
| I-129 | Petition for A Nonimmigrant Worker | P - Athletes, artists, and entertainers | December 26, 2007 |
| I-129 | Petition for A Nonimmigrant Worker | Q - Cultural exchange visitors and exchange visitors participating in the Irish Peace process | December 26, 2007 |
| I-129 | Petition for A Nonimmigrant Worker | R - Religious occupation | December 26, 2007 |
| I-129 | Petition for A Nonimmigrant Worker | TN - North American Free Trade Agreement (NAFTA) professional | December 26, 2007 |
| I-131 | Application for Travel Document | All other applicants for advance parole | March 17, 2008 |
| I-140 | Immigrant Petition for Alien Worker | Extraordinary ability | July 19, 2007 |
| I-140 | Immigrant Petition for Alien Worker | Outstanding professor or researcher | July 19, 2007 |
| I-140 | Immigrant Petition for Alien Worker | Multinational executive or manager | July 19, 2007 |
| I-140 | Immigrant Petition for Alien Worker | Schedule A Nurses | July 23, 2007 |
| I-140 | Immigrant Petition for Alien Worker | Advanced degree or exceptional ability | July 23, 2007 |
| I-140 | Immigrant Petition for Alien Worker | Advanced degree or exceptional ability requesting a National Interest Waiver | July 23, 2007 |
| I-140 | Immigrant Petition for Alien Worker | Skilled worker or professional | July 23, 2007 |
| I-140 | Immigrant Petition for Alien Worker | Unskilled worker | July 23, 2007 |
| I-360 | Petition for Amerasian, Widow(er), or Special Immigrant | All other special immigrants | December 06, 2006 |
| I-485 | Application to Register Permanent Residence or to Adjust Status | Employment-based adjustment applications | July 17, 2007 |
| I-485 | Application to Register Permanent Residence or to Adjust Status | Based on grant of asylum more than 1 year ago | July 06, 2007 |
| I-526 | Immigrant Petition By Alien Entrepreneur | For use by an entrepreneur who wishes to immigrate to the United States | November 01, 2007 |
| I-539 | Application to Extend/Change | Change of status to H or L dependents | June 14, 2007 |

| | Nonimmigrant Status | | |
|---|---|---|---|
| I-539 | Application to Extend/Change Nonimmigrant Status | Change status to the F or M academic or vocational student categories | June 14, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | Change Status to the J exchange visitor category | June 14, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | All other change of status applications | June 14, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | Extension of stay for H and L dependents | June 14, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | Extension of Stay for F or M academic or vocational students | June 14, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | Extension of Stay for J exchange visitors | June 14, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | All other extension applications | June 14, 2007 |
| I-612 | Application for Waiver of the Foreign Residence Requirement | Application for a waiver of the 2-year foreign residence requirement based on exceptional hardship or persecution | March 22, 2007 |
| I-730 | Refugee/Asylee Relative Petition | Petition for accompanying family members of a refugee or an asylee | April 13, 2007 |
| I-751 | Petition to Remove the Conditions on Residence | Removal of lawful permanent resident conditions (spouses of U.S. citizens and lawful permanent residents | December 18, 2007 |
| I-765 | Application for Employment Authorization | Based on a request by a qualified F-1 academic student. [(c)(3)] | April 28, 2008 |
| I-765 | Application for Employment Authorization | Based on a pending asylum application [(c)(8)] | April 28, 2008 |
| I-765 | Application for Employment Authorization | Based on a pending I-485 adjustment application [(c)(9)] | April 28, 2008 |
| I-765 | Application for Employment Authorization | Based on TPS for Honduras/Nicaragua [(c)(19), (a)(12)] | April 28, 2008 |
| I-765 | Application for Employment Authorization | Based on TPS for El Salvador [(c)(19)(a)(12)] | April 28, 2008 |
| I-765 | Application for Employment Authorization | All other applications for employment authorization | April 28, 2008 |
| I-817 | Application for Family Unity Benefits | Voluntary departure under the family unity program | December 13, 2007 |
| I-824 | Application for Action on an Approved Application or Petition | To request further action on an approved application or petition | December 18, 2007 |
| I-829 | Petition by Entrepreneur to Remove Conditions | Removal of lawful permanent resident conditions (immigrant investors) | July 12, 2007 |
| I-829 | Petition by Entrepreneur to Remove Conditions | Removal of lawful permanent resident conditions (immigrant investors) based on PL107-273 | May 31, 2007 |

[ Print This Page ]    [ Back ]

Case 1:08-cv-00378-E Service Document 4 Filed 06/27/2008    Page 18 of 22




Services & Benefits    Immigration Forms    Laws & Regulations    About USCIS    Education & Resource    Press Room

---

[ Print This Page ]   [ Back ]

## U.S. Citizenship and Immigration Services
## Vermont Service Center Processing Dates
## Posted June 15, 2008

The processing times shown below are a tool for our customers to gauge our current processing times. When applications and petitions are completed within our target timeframes, that goal will be shown in the data display.

The processing times shown below are for applications that have just been completed. If you have just filed your application, these timeframes may not reflect how long your application will take to be completed. We encourage you to check this page periodically before inquiring about your case. The processing times are updated monthly.

USCIS has received a significant increase in the number of applications filed. In July and August, nearly 2.5 million applications and petitions of all types were received. This compares to 1.2 million applications and petitions received in the same time period last year. This fiscal year, we received 1.4 million applications for naturalization; nearly double the volume we received the year before. The agency is working to improve processes and focus increased resources, including hiring approximately 1,500 new employees, to address this workload.

As a result, average processing times for certain application types may be longer. In particular, naturalization applications filed after June 1, 2007 may take approximately 13-15 months to process.

We offer a variety of services after you file.  For example, for most kinds of cases you can check the status of your case online.

For more information about when and how to contact us, whether your case is outside our processing time or if there are other issues, please see our customer guide –

Case Services - How do I... know what kind of services are available to me after I file my application or petition?

Service Center Processing Dates for **Vermont Service Center** Posted June 15, 2008

| Form | Title | Classification or Basis for Filing | Processing Timeframe |
|------|-------|-----------------------------------|----------------------|
| I-90 | Application to Replace Permanent Resident Card | Initial issuance or replacement | February 16, 2008 |
| I-90A | Application to Replace Permanent Resident Card | Initial issuance or replacement for Special Agricultral Workers (SAW) | August 05, 2005 |
| I-102 | Application for Replacement/Initial Nonimmigrant Arrival/Departure Record | Initial issuance or replacement of a Form I-94 | November 12, 2007 |
| I-129 | Petition for A Nonimmigrant Worker | H-1B - Specialty occupation - Visa to be | April 10, 2008 |

| | | issued abroad | |
|---|---|---|---|
| I-129 | Petition for A Nonimmigrant Worker | H-1B - Specialty occupation - Change of status in the U.S. | April 10, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | H-1B - Specialty occupation - Extension of stay in the U.S. | December 24, 2007 |
| I-129 | Petition for A Nonimmigrant Worker | H-2A - Temporary workers | May 16, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | H-2B - Other temporary workers | May 16, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | H-3 - Temporary trainees | March 27, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | L - Intracompany transfers | April 16, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | Blanket L | April 16, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | O - Extraordinary ability | April 16, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | P - Athletes, artists, and entertainers | April 16, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | Q - Cultural exchange visitors and exchange visitors participating in the Irish Peace process | April 16, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | R - Religious occupation | April 16, 2008 |
| I-129 | Petition for A Nonimmigrant Worker | TN - North American Free Trade Agreement (NAFTA) professional | April 16, 2008 |
| I-129F | Petition for Alien Fiance(e) | K-1/K-2 - Not yet married - fiance and/or dependent child | December 18, 2007 |
| I-129F | Petition for Alien Fiance(e) | K-3/K-4 - Already married - spouse and/or dependent child | December 18, 2007 |
| I-130 | Petition for Alien Relative | U.S. citizen filing for a spouse, parent, or child under 21 | July 30, 2007 |
| I-130 | Petition for Alien Relative | U.S. citizen filing for an unmarried son or daughter over 21 | July 02, 2006 |
| I-130 | Petition for Alien Relative | U.S. citizen filing for a married son or daughter over 21 | June 04, 2006 |
| I-130 | Petition for Alien Relative | U.S. citizen filing for a brother or sister | February 25, 2001 |
| I-130 | Petition for Alien Relative | Permanent resident filling for a spouse or child under 21 | January 18, 2006 |
| I-130 | Petition for Alien Relative | Permanent resident filling for an unmarried son or daughter over 21 | June 04, 2006 |
| I-131 | Application for Travel Document | All other applicants for advance parole | February 12, 2008 |
| I-140 | Immigrant Petition for Alien Worker | Extraordinary ability | April 01, 2006 |
| I-140 | Immigrant Petition for Alien Worker | Outstanding professor or researcher | April 01, 2006 |
| I-140 | Immigrant Petition for Alien Worker | Multinational executive or manager | April 01, 2006 |
| I-140 | Immigrant Petition for Alien Worker | Schedule A Nurses | April 01, 2006 |
| I-140 | Immigrant Petition for Alien Worker | Advanced degree or exceptional ability | April 01, 2006 |
| I-140 | Immigrant Petition for Alien Worker | Advanced degree or exceptional ability requesting a National Interest Waiver | April 01, 2006 |

| I-140 | Immigrant Petition for Alien Worker | Skilled worker or professional | April 01, 2006 |
| I-140 | Immigrant Petition for Alien Worker | Unskilled worker | April 01, 2006 |
| I-212 | Application for Permission to Reapply for Admission into the U.S. After Deportation or Removal | Readmission after deportation or removal | November 21, 2007 |
| I-360 | Petition for Amerasian, Widow(er), or Special Immigrant | Violence Against Women Act (VAWA) | July 30, 2007 |
| I-360 | Petition for Amerasian, Widow(er), or Special Immigrant | All other special immigrants | December 31, 2007 |
| I-485 | Application to Register Permanent Residence or to Adjust Status | Employment-based adjustment applications | July 24, 2006 |
| I-539 | Application to Extend/Change Nonimmigrant Status | Change of status to H or L dependents | August 20, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | Change status to the F or M academic or vocational student categories | August 20, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | Change Status to the J exchange visitor category | August 20, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | All other change of status applications | August 20, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | Extension of stay for H and L dependents | August 20, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | Extension of Stay for F or M academic or vocational students | August 20, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | Extension of Stay for J exchange visitors | August 20, 2007 |
| I-539 | Application to Extend/Change Nonimmigrant Status | All other extension applications | August 20, 2007 |
| I-612 | Application for Waiver of the Foreign Residence Requirement | Application for a waiver of the 2-year foreign residence requirement based on exceptional hardship or persecution | November 21, 2007 |
| I-751 | Petition to Remove the Conditions on Residence | Removal of lawful permanent resident conditions (spouses of U.S. citizens and lawful permanent residents | April 29, 2007 |
| I-765 | Application for Employment Authorization | Based on a request by a qualified F-1 academic student. [(c)(3)] | March 04, 2008 |
| I-765 | Application for Employment Authorization | Based on a pending asylum application [(c)(8)] | March 04, 2008 |
| I-765 | Application for Employment Authorization | Based on a pending I-485 adjustment application [(c)(9)] | March 04, 2008 |
| I-765 | Application for Employment Authorization | Based on TPS for Honduras/Nicaragua [(c)(19), (a)(12)] | March 04, 2008 |
| I-765 | Application for Employment Authorization | Based on TPS for El Salvador [(c)(19)(a)(12)] | March 04, 2008 |
| I-765 | Application for Employment Authorization | All other applications for employment authorization | March 04, 2008 |

| I-817 | Application for Family Unity Benefits | Voluntary departure under the family unity program | August 06, 2007 |
|---|---|---|---|
| I-821 | Application for Temporary Protected Status | El Salvador initial or late filing | September 03, 2007 |
| I-821 | Application for Temporary Protected Status | El Salvador extension | September 03, 2007 |
| I-821 | Application for Temporary Protected Status | Honduras and Nicaragua initial or late filing | September 03, 2007 |
| I-821 | Application for Temporary Protected Status | Honduras and Nicaragua extension | September 03, 2007 |
| I-824 | Application for Action on an Approved Application or Petition | To request further action on an approved application or petition | August 06, 2007 |
| N-600 | Application for Certification of Citizenship | Application for recognition of U.S. citizenship | July 16, 2007 |

[ Print This Page ]    [ Back ]



Home > Services & Benefits > "How Do I?" Factsheets > If Your Case is Pending

# If Your Case Is Outside Our Current Processing Time

The processing times that we publish let you estimate how long it will take us to process cases filed before yours, and then process your case. However, every case is different and sometimes an individual case can take longer than average.

If you don't hear from us within the normal processing time, check for updated processing times on our website. If your case has a receipt number, use it to check on the status of your case at the same time. We recommend this action on your part because our notice may be on its way to you.

If at any point your case should become more than 30 days outside our normal processing time, and you haven't received a written decision or update from us within the last 60 days, you can help us by calling customer service and letting us know. We will research your case, see what needs to be done to get it processed, and get back to you with an explanation.

- The extra 30 days is to allow time for any notice from us to reach you as we process your case.

If you filed a Form I-765, Application for Employment Authorization, and it has been longer than 90 days since you filed and you haven't gotten an update from us within the last 60 days, and have not seen any public notice that addresses your case type, please don't wait the extra 30 days. Call customer service immediately.

Home    Contact Us    Privacy Policy    Website Policies    PDF Reader    No FEAR    Freedom Of Information Act    USA.gov

U.S. Department of Homeland Security

**EXHIBIT 3**

Institute for Gulf Affairs - Ali Al-Ahmed



# Institute For Gulf Affairs

Freedom

Sunday June 22, 2008

| About IGA | Experts & Scholars | Issues | Events | Publications | Join IGA | Press Room |



Search IGA

**Bahrain**
Country Profile
Latest News
Resource

**Iraq:**
Country Profile
Latest News
Resource

**Kuwait**
Country Profile
Latest News
Resource

**Oman:**
Country Profile
Latest News
Resource



Ali Al-Ahmed

Ali Al-Ahmed is a Saudi scholar and expert on Saudi political affairs including: terrorism, Islamic movements, Wahhabi Islam, Saudi political history, Saudi-American relations, and the al-Saud family history. He is a writer, and public speaker on Saudi political issues.

He has been invited to speak by Princeton University, Amnesty

Institute for Gulf Affairs - Ali Al-Ahmed

International, the Hudson Institute and Meridian International Center.

As journalist he exposed major news stories such as the Pentagon's botched translation of the 9-11 Bin Laden tape, and the video of Daniel Pearl's murder.

He has authored reports on Saudi Arabia regarding religious freedom, torture, press freedom, and religious curriculums.

A frequent consultant to major world media outlets including CBS News, CNN, PBS, Fox News, Washington Post, and Associated Press.

Al-Ahmed has been quoted in the Washington Post, the Wall Street Journal, USA Today, the Boston Globe and other newspapers in several languages.

He graduated with a B.A. in Journalism and Science and a M.A. in International Finance from Saint Thomas University in Saint Paul.

**Qatar:**
Country Profile
Latest News
Resource

**Saudi Arabia:**
Country Profile
Latest News
Resource

**United Arab Emirates:**
Country Profile
Latest News
Resource

1900 L Street N.W., Suite 309, Washington, DC 20036 - (202) 466-9500
Tax-exempt organization under Section 501(c)(3) of the IRS

Institute for Gulf Affairs - Ali Al-Ahmed

©Copyright 2005 Institute For Gulf Affairs All Rights Reserved

For more information feel free to Contact Us

**EXHIBIT 4**

## INTERNATIONAL
# Herald Tribune

## Bar countries that ban women athletes

**By Ali Al-Ahmed**
Monday, May 19, 2008

The procession of the Olympic torch drew protests from Paris to San Francisco over China's treatment of the Tibetan people, but no one has protested another tragedy that is afflicting millions of women in Saudi Arabia, Iran and other Muslim countries. Many Muslim women dare not even dream of the Olympics because their countries ban female sports altogether or severely restrict the athletic activities of the "weaker sex."

In a few months world attention will turn to Beijing, where over 10,000 athletes representing approximately 200 countries will once again celebrate athletic competition without borders. Fittingly, the slogan of the 29th Olympic Games is "One World, One Dream." This dream, however, will not be realized by women in Saudi Arabia and other Muslim countries that ban women from sports domestically and internationally.

The International Olympic Committee charter states that "any form of discrimination with regard to a country or a person on grounds of race, religion, politics, sex or otherwise is incompatible with belonging to the Olympic Movement."

But the Olympic Committee is failing to adhere to its own standards. While the hypothetical example of participating countries barring black athletes from the Olympic Games would have rightly caused international outrage, the committee continues to allow the participation of countries that do not allow women on their Olympic teams.

Although the number of all-male teams has been shrinking steadily - from 35 in Barcelona in 1992 to 26 in Atlanta in 1996 to only 10 in Sydney in 2000 and four or five at the last Olympics in Athens, the IOC should do more to eliminate the discriminatory policies practiced by its members in direct violation of the Olympic charter. The IOC should take the position that countries precluding women from participation in the Olympic Games should be suspended from the Olympic community until they allow women equal opportunity to participate. The Olympic committees in the Americas, the European Union, and other democratic nations should take the lead to develop a zero-tolerance policy toward countries that bar women from the Games. Olympic athletes, especially those who are world famous, should also express their support for the full participation of women.

Countries with men-only Olympic teams include Brunei, the United Arab Emirates and Saudi Arabia. According to their respective governments, women are barred from Olympic participation for "cultural and religious reasons."

For some countries, women's clothing mandated by the conservative interpretation of religion precludes their participation in most sports - for instance, Iran's female Olympians were limited to pistol- and rifle-shooting at the Barcelona, Sydney and Athens Olympics. Saudi Arabia is the only country in the world that completely bars women from any sports activity.

Yet there are many predominantly Muslim countries where women are allowed to compete. Susi Susanti became the first Olympic athlete to win a gold medal for Indonesia in badminton, and the majority-Muslim Central Asian republics of the former Soviet Union impose no restrictions on female participation. Even Afghanistan sent a female runner to compete in a 100-meter dash in Athens (she competed in long trousers and a short-sleeved top). Algeria's Hassiba Boulmerka won the 1,500-meter race in 1992 wearing contemporary running shorts.

For the last 15 years, many international nongovernmental organizations worldwide have been trying

to lobby the IOC for better enforcement of its own laws banning gender discrimination. After the 1992 Olympics, the group Atlanta/Sydney Plus took the lead in pressing the IOC to increase participation of women in the Games. While their efforts did result in increasing numbers of women Olympians, the IOC has been reluctant to take a strong position and threaten the discriminating countries with suspension or expulsion.

If the IOC is pressed to live up to its own standards, the London Games in 2012 should witness the celebration of female Olympians from Saudi Arabia, Qatar, the United Arab Emirates, Iran and other Muslim countries.

*Ali Al-Ahmed is the director of the Institute for Gulf Affairs in Washington.*

Notes:

**IHT**  Copyright © 2008 The International Herald Tribune | www.iht.com

**EXHIBIT 5**



Start **401 Courthouse Square**
**Alexandria, VA 22314**

End **333 Constitution Ave NW**
**Washington, DC 20001**

Travel **10.6 mi – about 22 mins, up to 30 mins**
**in traffic**



Get Google Maps on your phone
Text the word "GMAPS" to 466453

**Ⓐ 401 Courthouse Square**
**Alexandria, VA 22314**

Drive: 10.6 mi – about 22 mins, up to 30 mins in traffic

### Overview



|     |     |     |
| --- | --- | --- |
| 1. | Head **southeast** on **Courthouse Square** toward **Elizabeth Ln** | 249 ft |
| ← 2. | Turn **left** at **Elizabeth Ln** | 135 ft |
| → 3. | **Elizabeth Ln** turns slightly **right** and becomes **Ballenger Ave** | 495 ft |
| ← 4. | Turn **left** at **Dulaney St** | 282 ft |
| → 5. | Turn **right** to stay on **Dulaney St** | 0.1 mi |
| ← 6. | Turn **left** at **Duke St/VA-236 W** | 0.1 mi 2 mins |
| → 7. | Sharp **right** at **Callahan Dr** | 0.2 mi 1 min |
| ← 8. | Turn **left** at **King St/VA-7** | 2.5 mi 7 mins |
| 9. | Merge onto **I-395 N** via the ramp to **Washington** Entering District of Columbia | 6.8 mi 9 mins |
| 10. | Take the exit toward **US Capitol** | 0.2 mi |
| ← 11. | Keep **left** at the fork, follow signs for **D St NW** | 0.1 mi |
| ← 12. | Turn **left** at **D St NW** | 427 ft |
| ← 13. | Turn **left** at **3rd St NW** | 423 ft |
| → 14. | Turn **right** at **C St NW** | 367 ft |

### Start



### End



**Ⓑ 333 Constitution Ave NW**
**Washington, DC 20001**

These directions are for planning purposes only. You may find that construction projects, traffic, or other events may cause road conditions to differ from the map results.

Map data ©2008 NAVTEQ™, Sanborn